617 So.2d 107 (1993)
Arthur K. KAISER
v.
Reginald C. GARRUS.
No. 92-CA-1941.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 1993.
*108 Ernest A. Burguieres, III, New Orleans, for plaintiff/appellant.
Before CIACCIO, WARD and LANDRIEU, JJ.
LANDRIEU, Judge.
Arthur K. Kaiser, the plaintiff in this redhibition claim, seeks our review of the trial court's judgment, which he claims failed to compensate him fully for his losses associated with the purchase of a used Jaguar automobile. Finding merit in some of his arguments, we amend that judgment.

FACTS AND PROCEDURE:
On August 2, 1990, Arthur K. Kaiser (hereinafter "Kaiser") purchased a 1984 Jaguar XJ-6 automobile from Reginald C. Garrus (hereinafter "Garrus"), for a purchase price of $11,500.00. Garrus, a salesman for Superior Acura, acquired the car from the dealership in November of 1989 for $6700.00, the value fixed in a trade-in by the automobile's prior owner.
Before title was passed, Kaiser paid an additional $1350 for painting and upholstery repairs as well as for mechanical repairs to the exhaust manifold and to the air conditioning system. These repairs and a "complete inspection" were done by Eleazar Bueso, a mechanic formerly employed at Superior Acura, at the recommendation of Garrus. Thereafter, Garrus indicated on the bill of sale that the vehicle was in "good" condition.
As soon as Kaiser began to drive the car on a regular basis, he noted that it consumed an unusually high amount of oil, approximately one quart every forty miles. Nevertheless, there was no evidence of a leak or of excessive smoke. After attempting unsuccessfully to contact the mechanic originally recommended by Garrus, Kaiser scheduled an appointment with Paretti Imports, a Jaguar dealership, to determine the problem. There, Kaiser was informed that his vehicle was a "gray market car," that is, an import that is not made for American distribution. Such vehicles typically lack safety features and fail to meet *109 emission standards required in the United States. In addition, the gray market Jaguar is readily distinguishable because of features such as larger headlights and fog lights mounted in the rear bumper. According to the general manager of Paretti Imports, it would cost approximately $14,000.00 to convert a gray market car into the equivalent of a Jaguar made for American distribution, and he had never seen one properly done. Therefore, in valuing a gray market vehicle, he estimated that either the wholesale or retail value should be cut in half. Although it was Paretti's policy to avoid servicing gray market Jaguars, several mechanics in the area, including Performance MotorWerks, were recommended to customers such as Kaiser.
At Performance, a complete engine overhaul was recommended at an estimated cost of $5000.00. According to the mechanic, the vehicle was burning oil internally, due to a collapsed ring on the piston. Such a situation permitted oil to enter the combustion chamber, which could have fouled out the spark plug and prohibited the engine from running. However, the mechanic found that the spark plugs installed in the engine were three to four heat ratings hotter than the factory recommended plug. Although this plug could ultimately burn a hole in the top of the piston, in the short term, the hotter spark plug burned the oil in the combustion chamber and thereby masked the engine's deficiencies, according to the mechanic. It was also noted that the catalytic converters had been removed, possibly to give the vehicle more power and better fuel efficiency, and that the air injection system had been rendered useless. Repairs to bring the vehicle back to EPA standards were estimated to cost approximately $2000.00.
Before authorizing any work, Kaiser contacted Garrus and asked for financial assistance in having such a major repair undertaken approximately one month after the date of purchase. Garrus felt that the estimate for the engine overhaul was too high. According to Kaiser, Garrus offered to re-acquire the vehicle as an alternative. However, on the following day, Garrus informed Kaiser that a potential purchaser was no longer interested in the Jaguar, and he made no further effort to resolve the dispute.
On September 15, 1990, the repairs to the engine were completed, and the $5254.02 bill was paid by Kaiser with a loan from USAA, which had also financed the purchase of the car, both at the rate of 13% per annum. Kaiser was charged $75.70 a month later for routine follow-up service after the overhaul. New tires were purchased on February 26, 1991 at a cost of $577.48 allegedly because the belts were damaged when the prior owner kept them under-inflated. Other expenses were evidenced at trial by a bill dated February 21, 1991 for $119.30 to realign the car, to change the oil, and to check the lights; a bill dated June 4, 1991 for $78.26 to replace the fuel filter and to inspect for the presence of emission control devices; a towing charge of $75.00 dated July 3, 1991; a bill dated July 5, 1991 for $109.92 to replace an ignition coil; and a bill dated January 21, 1992 for $250.00 to install the cruise control, which had not functioned at the time Kaiser purchased the used car. Finally, in the summer of 1992, Kaiser traded the Jaguar for an actual cash value of $3500.00 towards the purchase of a new car. According to the sales manager who took the trade, the low market value was due to the vehicle's status as a gray market car.
Kaiser filed suit for damages on December 4, 1990 while he still owned the Jaguar. He sought rescission of the sale plus all expenses incurred in attempting to rectify the problems with the car, or, alternatively, he sought to recover these expenses as well as all other expenses necessary to make the vehicle perform as expected and to comply with all state and federal safety and emission requirements. Although he sought to supplement and amend his petition to allege a claim under the Unfair Trade Practices Act, the supplementation was struck by the trial court on the motion of Garrus.
After a trial on the merits, judgment was rendered in favor of Arthur K. Kaiser and against Reginald C. Garrus in the sum of $5,254.02, with interest from judicial demand, *110 and costs. Although the judge found that it was more likely than not that the engine was defective when Kaiser purchased the car, he did not believe that Garrus had knowledge of either that defect or the absence of the emission controls. Therefore, the trial judge also concluded that the Unfair Trade Practices Act was not applicable in this situation. Furthermore, he did not find that the vehicle was defective simply because it was not manufactured for distribution in the United States, i.e., a gray market car. Kaiser appeals and asks that this court render judgment in an amount sufficient to compensate him for all of his losses.

DISCUSSION:

Redhibition:
Pursuant to La.Civ.Code Ann. art. 2520 (West 1952), redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless or its use so inconvenient and imperfect that it is assumed that, had the buyer known of the defect, he would not have purchased it. To sustain a suit in redhibition, a buyer must prove that the thing sold is absolutely useless for its intended purpose or its use so inconvenient that he would never have purchased it had he known of the defect; the defect existed at the time of the purchase but was not apparent; and the seller was given an opportunity to repair the defect. Coffey v. Cournoyer Oldsmobile-Cadillac-GMC, Inc., 484 So.2d 798, 800 (La.App. 1st Cir. 1986).
Instead of seeking to rescind the sale, a purchaser may seek to reduce the purchase price or, in a redhibitory suit, a judge may decree merely a reduction of the price. La.Civ.Code Ann. arts. 2541 and 2543 (West 1952). La.Civ.Code Ann. art. 2544 (West 1952) provides that such action is subject to the same rules and the same limitations as the redhibitory action. Furthermore, a buyer who is not in position to return the purchased item, is not entitled to rescission of the sale and recovery of the full purchase price. In such case, the buyer is entitled only to a reduction in the amount of the purchase price. Stratton-Baldwin Co., Inc. v. Brown, 343 So.2d 292, 297 (La.App. 1st Cir.1977) (citing J.B. Beaird Co., Inc. v. Burris Bros. Limited, 216 La. 655, 44 So.2d 693 (1950)).
Although this warranty against redhibitory defects applies to the sale of used equipment, it is not as extensive as in the sale of new equipment. Inherent in the sale of an older car is the knowledge that the machinery and parts are worn and subject to breakdown and that mechanical work will be required from time to time to keep the vehicle in good running condition. Burch v. Durham Pontiac Cadillac, Inc., 564 So.2d 380, 382-83 (La.App. 1st Cir. 1990).
If the seller is unaware of the defects, according to La.Civ.Code Ann. art. 2531 (West Supp.1993), he is only required to repair or correct the vice or, if unable to effect the repair, to restore the purchase price together with reasonable expenses occasioned by the sale and for the preservation of the thing. La.Civ.Code Ann. art. 2545 (West Supp.1993) permits the award of attorney's fees and damages to the buyer should the seller be aware of the vice and omit to declare it.
Kaiser's claim for redhibition is based on both a pattern of defects which he claims rendered the car's use inconvenient and imperfect and its status as a gray market car. Although the judge apparently concluded that the problems with the engine diminished the value of the vehicle and warranted reimbursement for the repair, he did not find that the car's status as a gray market vehicle was a defect. Furthermore, he did not specifically rule on the inadequacy of the air conditioning system or the emission control system.
We note that problems with the air conditioning system were known to Kaiser prior to his purchase of the vehicle. In fact, he contracted with Eleazar Bueso for some repair in that regard. However, there is no suggestion in the record that Kaiser was aware that the catalytic converters had been removed or that the air injection system had been rendered useless, and such *111 defects could not have been discovered by simple inspection. Absent these emission control devices, the vehicle could not be legally driven. Nevertheless, since Kaiser has sold the car, we need not decide whether the defects involving the engine and the emission control devices render the Jaguar useless and altogether unsuited for its purpose.

Damages:
In all events, the court now may award only a reduction in the purchase price of the car. We agree with the trial court that the Jaguar automobile purchased by Kaiser from Garrus had defects which substantially diminished its value. We conclude, however, that the defects are not limited to the motor, which had to be overhauled one month after the purchase. The absence of the emission controls likewise diminished the value of the car and should have been considered in the judgment of the trial court. Accordingly, we find that the award to Kaiser should be increased by $2000.00 to include the diminution in value caused by the lack of emission control devices.

Attorney's Fees:
Pursuant to Article 2545, reasonable attorney's fees would be available should the seller have been aware of the defects and neglected to inform the buyer. In this case, the trial judge found that the seller did not have knowledge of either the defect in the engine or the removal and/or disconnection of the emission control system. Based on our standard of review, we cannot conclude that the trial judge was clearly wrong in this finding of fact. Accordingly, we conclude that Kaiser, the buyer, is not entitled to an award for his attorney's fees.

Unfair Trade Practice:
Despite the trial judge's refusal to permit Kaiser to supplement and amend his petition to include a claim for treble damages under the Unfair Trade Practices Act, he obviously considered the plaintiff's additional legal cause of action. In the reasons for his judgment, the trial judge concluded that La.Rev.Stat.Ann. § 51:1949 (West 1987) was applicable in a consumer transaction only if the seller had actual knowledge of the defect in the emission control system. Finding that the emission system had been disconnected without the seller's knowledge in this case, the judge dismissed this claim.
We agree with the trial court's conclusion in this regard. La.Rev.Stat.Ann. § 51:1409 (West 1987) permits the award of treble damages and attorneys fees in a private action when the "unfair or deceptive method, act or practice was knowingly used." (emphasis added) In fact, that statute even requires that notice be given by the director of the Governor's Consumer Protection Division or by the attorney general.
Since we decline to disturb the trial court's finding of fact that the seller was unaware that the emission control system of the Jaguar had been disconnected, we must necessarily conclude that the Unfair Trade Practices Law is not applicable to this case.

Testimony of Expert:
Kaiser complains that the trial court admitted in error the testimony of Eleazar Bueso, through an interpreter. Our review of that testimony shows that it added little, if anything, to the resolution of the case. Consequently, we find that any error by the trial court in this regard was harmless.

CONCLUSION:
For the foregoing reasons, we find that the problems with the engine and the emission control system of the 1984 Jaguar XJ-6 automobile sold by Reginald Garrus to Arthur Kaiser were defects which diminished the value of the car. These defects require that the purchase price of the car be reduced in the amount of $7,254.02. Since we do not find that the trial court was clearly wrong in concluding that the seller was unaware of the defects prior to the sale, we cannot award attorney's fees to the buyer. For the same reason, the Unfair Trade Practices Act is inapplicable to this claim.
*112 Accordingly, the judgment of the trial court is amended to increase the award to Kaiser but affirmed in all other respects.
AMENDED.