633 So.2d 399 (1994)
Dr. Cornel H. LeBLANC, Plaintiff-Appellee,
v.
MERCEDES-BENZ OF NORTH AMERICA, INC., et al., Defendants-Appellants.
No. 93-907.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
Rehearing Denied April 7, 1994.
*401 Fred Andrew Pharis, Alexandria, for Dr. Cornel H. LeBlanc.
David Payne Spence, Alexandria, for Mercedes-Benz of North America Inc., et al.
Before GUIDRY, LABORDE and THIBODEAUX, JJ.
GUIDRY, Judge.
In this redhibition suit, judgment was rendered in accord with a jury verdict awarding plaintiff, Dr. Cornel H. LeBlanc, judgment against defendants, Mercedes-Benz of North America (MBNA) and Walker Oldsmobile Company Inc. (Walker), decreeing the following:
(1) Rescission of the May 11, 1990 sale of a 1990 Mercedes-Benz 190E automobile;
(2) Awarding $43,579 to Dr. LeBlanc against defendants, in solido, representing purchase price, expenses and damages connected with the sale, plus interest thereon from date of judicial demand;
(3) Attorney's fees in the amount of $15,253 plus interest thereon from the date of judgment; and,
(4) All costs.
Defendants appeal raising four issues:
(1) The trial judge erred in denying their motion for mistrial after improper and prejudicial jury voir dire;
(2) Granting rescission of the sale and awarding full refund of the purchase price plus expenses;
(3) Neither allowing introduction into evidence of the lease value of plaintiff's vehicle nor allowing defendants a credit for use of the vehicle; and
(4) Allowing introduction of plaintiff's contingency fee contract with his attorney and awarding excessive attorney's fees.
Plaintiff answered the appeal seeking additional damages for mental anguish; the purchase price of a 1992 Chrysler LeBaron purchased as a replacement for the 1990 Mercedes-Benz; and, additional attorney's fees for post trial motions and appellate work.
We amend the judgment of the trial court and affirm as amended.

FACTS
Plaintiff, Dr. Cornel H. LeBlanc, an optometrist, bought a new 190E four-door Mercedes-Benz from Walker Oldsmobile on May 11, 1990. The price of the car, including finance charges, was $43,415.31. The 1,000 miles service was performed on May 21, 1990. Dr. LeBlanc testified that, at that time, he complained of excessive oil usage but was told that since the car had light weight, "break in oil" in it, oil consumption was expected and he should not be concerned. Over the next 23 months he continually complained of oil consumption problems to the dealer. These complaints resulted in numerous oil consumption tests and replacement of the engine's valve stem seals, valve stem guides and engine head in attempts to satisfy plaintiff's complaints.
In addition to excessive oil usage, Dr. LeBlanc experienced major transmission problems. Two transmissions had to be replaced and, at the time of trial, the third transmission would not shift out of second gear. Plaintiff also experienced a number of relatively minor problems including a number of malfunctions in the cruise control, problems *402 with heater and air conditioning controls, a defective speedometer which required replacement, repeated malfunctioning of the SRS or air bag light and a broken seat back adjuster which also required replacement.
Finally, on April 16, 1992, with approximately 44,000 miles on the car, Dr. LeBlanc wrote a letter to Walker demanding rescission of the sale. When the parties could not reach agreement, this suit was filed.

DENIAL OF A MOTION FOR MISTRIAL IN CONNECTION WITH PLAINTIFF'S EXAMINATION OF PROSPECTIVE JUROR, JOHN H. TADEMY
After eleven jurors had been seated, five members of the venire were called to fill the remaining two spaces, the last juror's slot and that of the alternate. The last prospective juror called was John H. Tademy. Two of those called before Tademy were accepted and sworn. Tademy was not the subject of a challenge and was released because his service was not needed.
In questioning Tademy, plaintiff's counsel discovered that Tademy had purchased a 1987 Mercedes Benz from Walker and had experienced excess oil consumption. Tademy stated that he had to consult the factory representative before the problem was solved.
Appellants' sole complaint on this issue is that "... the trial court permitted much too much latitude to plaintiff's counsel ..." in his examination of Tademy. As authority for his argument, he relies on Morgan v. Liberty Mutual Insurance Company, 323 So.2d 855 (La.App. 4th Cir.1975). In Morgan, supra, at 859, the court found plaintiff's counsel unduly prejudiced the jury on voir dire as follows:
... in the guise of determining whether any prospective juror had a reservation about awarding high damages, plaintiff's counsel in voir dire examination repeatedly suggested the amount of the verdict to be reached. Over objection by defense counsel, he was permitted to ask if jurors had any reservations about awarding $4 million. In addition, counsel exceeded the bounds set in C.C.P. art. 1763 by including in voir dire examination what should have been reserved for argument....
In State v. Williams, 457 So.2d 610, 613 (La.1984), the Louisiana Supreme Court stated the following well settled points of law:
... The purpose of voir dire examination is to determine the qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion....
We find the trial judge did not abuse his much discretion in this case. Not only did he limit plaintiff's counsel in his scope of questioning of Tademy, but he also sustained defense counsel's objection when plaintiff's counsel attempted to exceed that limit. Further, the trial judge cautioned counsel that any reference to Tademy's experience during his case in chief or closing argument would not be tolerated.
In Barnes v. Thames, 578 So.2d 1155, 1161 (La.App. 1st Cir.1991), writ denied, 577 So.2d 1009 (La.1991), our brethren of the First Circuit stated:
The Louisiana Code of Civil Procedure does not expressly provide for mistrials, and the jurisprudence concerning motions for mistrial in civil cases is limited. Generally, mistrials are properly granted because of some fundamental failure in the proceeding. Searle v. Travelers Insurance Company, 557 So.2d 321, 323 (La.App. 4th Cir.1990). Generally, a motion for mistrial in a civil case should be granted under the following circumstances: (1) when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity; and (2) where no other remedy would provide relief to the moving party. Searle v. Travelers Insurance Company, 557 So.2d at 323. See Spencer v. Children's Hospital, 432 So.2d 823, 825-26 (La.1983).

*403 Motions for mistrial should also be granted upon proof of prejudicial misconduct occurring during a jury trial, which cannot be cured by admonition or instruction. Searle v. Travelers Insurance Company, 557 So.2d at 323. Because a mistrial results in the discharge of one jury and the impaneling of another to try the case anew, it is a drastic remedy. Burks v. McKean, 559 So.2d 921, 926 (La.App. 2nd Cir.), writ denied, 566 So.2d 398 (La.1990). The trial judge is vested with broad discretion to grant a motion for mistrial where no other remedy would afford relief or where circumstances indicate that justice may not be done if the trial continues. Burks v. McKean, 559 So.2d at 926; Streeter v. Sears, Roebuck and Company, Inc., 533 So.2d 54, 62 (La.App. 3rd Cir. 1988), writ denied, 536 So.2d 1255 (La. 1989). This court should not disturb the trial court's determination unless there was an abuse of discretion. See Streeter v. Sears, Roebuck and Company, Inc., 533 So.2d at 62.
Denial of the motion for mistrial in this case was not error. The trial judge limited plaintiff's examination of Tademy and cautioned that use of the information discovered during this examination should not be referred to. Further, there is no indication that the complained of examination was so prejudicial as to taint the outcome of the trial. Tademy was not seated as a juror and at the time of his examination, the remaining jurors knew no details of the case. This assigned error has no merit.

RESCISSION OF THE SALE
It is settled that when a defect in the thing sold makes it absolutely useless or so inconvenient in use that a purchaser would not have bought the merchandise had he known of the vice, an action lies in redhibition. La. C.C. art. 2520; Monk v. Scott Truck & Tractor, 619 So.2d 890 (La.App. 3rd Cir.1993); Kaiser v. Garrus, 617 So.2d 107 (La.App. 4th Cir.1993); Wheeler v. Clearview Dodge Sales, 462 So.2d 1298 (La.App. 5th Cir.1985).
A plaintiff seeking rescission of a sale under the redhibition articles must prove by a preponderance of the evidence that the item sold contained a hidden defect at the time of sale. While any defects which appear within three days of a sale are presumed to have existed at the time of the sale, defects which appear later, after the item is put to use, in the absence of other explanation or an intervening cause, may reasonably be inferred to have existed at the time of sale. Rey v. Cuccia, 298 So.2d 840 (La.1974).
In this case, considering the lack of any intervening cause; the number of repairs performed by the dealer (approximately 30); the severity of the problems; the value of the warranty repairs (about $14,800); and, the condition of the automobile at the time of trial, we find no error in the jury verdict granting a rescission of the sale.

REFUSAL BY THE TRIAL COURT TO ALLOW INTRODUCTION OF THE LEASE VALUE OF PLAINTIFF'S AUTOMOBILE AND FAILURE OF THE TRIAL COURT TO AWARD DEFENDANTS CREDIT FOR PLAINTIFF'S USE OF THE AUTOMOBILE
Defendants called Richard E. LeBlanc, Jr., the lease manager of Walker, in an attempt to establish through lease figures the value of plaintiff's car at the time of trial. Further, based on the number of miles Dr. LeBlanc had put on the car, defendants sought to establish the number of miles per year allowed during a lease and the excess mileage charge in a lease contract in order to establish the value of plaintiff's use of the automobile. The trial judge refused to admit any testimony based on lease value, concluding that the transaction in question was a sale and thus any figures based on a lease were irrelevant. The jury, in response to interrogatories, granted defendants no credit for Dr. LeBlanc's use of the car.
We find both these rulings to be clear error. There are no tables or other data which, in the instance of a sale of an automobile, give any indication or guidance as to the per mile value of the use of a vehicle. Accordingly, we find that allowing LeBlanc to present the per mile value of a leased, like model and year Mercedes would, by analogy, be relevant and, in our view, admissible. See *404 La.C.E. art. 401. LeBlanc, on proffer, testified that a like 1990 model Mercedes would have leased for $436.22 per month with 15,000 miles of free use being allowed annually. This would calculate out to a value of $0.348976 per mile for the first 15,000 miles. Miles in excess of the "free" allowance would have been charged at the rate of $.15 per mile.
We recognize that in cases where the value of plaintiff's use of an object has been greatly overridden by the inconveniences incurred, a credit for use may be denied. See Brown v. Mid-City Motors, Inc., 248 So.2d 27 (La. App. 1st Cir.1971); Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978); and Atkinson v. Total Computer Systems, Inc., 492 So.2d 121 (La.App. 1st Cir.1986), writ denied, 496 So.2d 356 (La.1986).
At the time of the trial (mid-April 1993), Dr. LeBlanc testified that he had 55,069 miles on the automobile.
While Dr. LeBlanc and his family were inconvenienced by the numerous break-downs of the Mercedes, both Dr. LeBlanc and his wife testified that a free replacement vehicle was provided whenever the car had to be kept overnight. In cases such as the one at bar, where plaintiff has derived reasonable benefit from the product (in this case, plaintiff put over 55,000 miles on the car in less than three years), a credit for use has usually been allowed. See Hanley v. Regency Olds GMC, Inc., 509 So.2d 1027 (La.App. 3rd Cir. 1987); Monte v. Harvey, Inc., 596 So.2d 278 (La.App. 3rd Cir.1992), writ denied, 600 So.2d 640 (La.1992). We note, however, that to the extent the redhibitory defects inconvenience the purchaser or limit his use, those facts may be considered in a court's determination of the credit for use to be awarded. Considering all of the foregoing factors, we conclude that the jury clearly erred in disallowing any credit whatever to defendants for the extensive use by plaintiff of the Mercedes-Benz automobile. Under the circumstances, we conclude that defendants are entitled to a credit for use of the automobile at the rate of 15 cents ($0.15) per mile or $8,260.35. We will amend the judgment to reflect this credit.

PLAINTIFF'S ATTORNEY'S FEES
Defendants do not argue that plaintiff should not have been awarded attorney's fees; rather, they argue that the court erred in allowing the "Representative Agreement" between plaintiff and his counsel to be placed before the jury. That agreement, a contingency fee contract, called for a fee of 35% of recovery if the case came to within three weeks of or went to trial. This was exactly the amount of attorney's fees awarded by the jury herein.
The amount of the award of attorney's fees in redhibition suits was recently discussed by this court in Buteau v. Leleux, 591 So.2d 1261 (La.App. 3rd Cir.1991), wherein we stated:
... It is well settled that in determining attorney's fees in a redhibition case, the trial court must consider the following factors:
1. The responsibility incurred;
2. The extent and nature of the work performed;
3. The legal know how and skill of counsel; and,
4. The amount of the claim and the amount recovered for the plaintiff.
See Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428 (La.App. 5th Cir.1989); Guillory v. Jim Tatman's Mobile Homes, 490 So.2d 1185 (La.App. 3rd Cir.1986); and, Dunn v. Redman Homes, Inc., 411 So.2d 722 (La.App. 3rd Cir.1982)....
Further, it is also generally recognized that courts are not bound by the terms of a contingency fee contract when awarding attorney's fees. See Ralston v. Connecticut General Life Insurance Company, 617 So.2d 1379 (La.App. 3rd Cir.1993); Louisiana State Bar Articles of Incorporation, Art. 16; and Rules of Professional Conduct, Rule 1.5.
In the case at bar no testimony or evidence was adduced as to the amount of time expended by plaintiff's attorney in his preparation and the trial of plaintiff's case. We note the case was relatively uncomplicated, presenting no novel issues and was in a well settled area of the law. The suit did not involve protracted litigation, it was filed in *405 June 1992 and tried to a jury in April 1993. On the other hand, plaintiff's demand for redhibition was vigorously opposed and counsel was successful in securing all relief which plaintiff sought, less that which we allow for use of the vehicle. Under the circumstances, although we find the award of attorney's fees to be generous, we are unable to conclude that such award constitutes a clear abuse of the jury's much discretion. However, we consider the amount awarded to be adequate compensation for services performed by plaintiff's counsel both at the trial level and on appeal.

PLAINTIFF'S ANSWER TO APPEAL
The first issue raised by plaintiff on his answer to appeal is that of damages for mental anguish. Plaintiff argues the jury erred in refusing to award him damages for mental anguish, humiliation and inconvenience.
The latest pronouncement by the Louisiana Supreme Court on the issue of nonpecuniary damages is found in Young v. Ford Motor Company, Inc., 595 So.2d 1123 (La. 1992). In Young, supra, at 1132 and 1133, the court stated:
While the Council intended that multiple objects or interests (pecuniary and nonpecuniary) may co-exist in a contract which might trigger mental anguish damages, they decided that not all cases involving breaches of contract would qualify for the recovery of mental anguish damages, contrary to what Professor Litvinoff had advocated. The only cases that would qualify for the recovery of this type of damages were those where the plaintiffs could show that they intended, at the time of contracting (and the nature of the contract supported such intention), to gratify a significant nonpecuniary interest.
We have said, in the former paragraph and elsewhere in this opinion, that the obligee's nonpecuniary interest must be "significant." As we said in Meador,[1] this nonpecuniary interest must be more than "an incidental or inferred contemplation of the contracting parties." 332 So.2d [433] at 437 [La.1976].
During the Revision process, the Council, and subsequently the Legislature, could easily have restricted the recovery of nonpecuniary damages to those contracts formed solely to gratify nonpecuniary interests. Indeed, the prior, conditionally-accepted draft of that article would have accomplished that objective. They did not choose to do so. Similarly, they could have chosen to expand recovery of these damages to all contract cases (even those whose exclusive object is to gratify pecuniary interests), as advocated by Professor Litvinoff. They did not. Instead, the choice they made was to preserve the substance of source article 1934(3) as interpreted by Meador, thereby permitting recovery of nonpecuniary damages in situations where nonpecuniary interests constitute at least one of the significant interests that the obligee intended to gratify. The latter might be classified as a hybrid, or mixed, situation where obligees who enter the contract to gratify both pecuniary and nonpecuniary interests are permitted the recovery of nonpecuniary damages.
Thus, under Article 1998, which is the controlling article for the type of damages referred to by the redhibition articles (specifically Article 2545), if it can be established that the obligee intendedand if the nature of the contract supports this contentionto gratify a significant nonpecuniary interest by way of the contract, and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, then the requirements for recovery of nonpecuniary damages are satisfied.
Plaintiff argues that damages for nonpecuniary losses are due inasmuch as he bought the car because it was beautiful, had a sports car look to it, a special paint job and other amenities. However, when Mrs. LeBlanc was questioned about her husband's motives for buying this particular car, she responded, "... work was the primary reason". She went on to state that Dr. LeBlanc "... needs something that would be comfortable... that would be reliable, plus he wanted *406 to enjoy it". On cross-examination, Dr. LeBlanc did admit that he used his car to travel to and from work and between his three office locations.
Under the facts of this case, we cannot say that the jury clearly erred in denying plaintiff any mental anguish damages. Dr. LeBlanc failed to prove that in buying the vehicle he intended "to gratify a significant nonpenuniary interest ..." which Walker and MBNA either knew or should have known about.

THE REPLACEMENT VEHICLE
Plaintiff next argues that he should be awarded additional damages for the liability he incurred in purchasing a replacement vehicle for the Mercedes. In Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127 (La.App. 1st Cir.1992), our brethren of the First Circuit ably reviewed the issue of recoverable damages in a redhibition case stating:
Generally, the amount of damages a plaintiff can recover depends upon the type of seller involved. Under LSA-C.C. art. 2531, a good faith seller, namely, one who knew not of the vices in the thing he sold, is required to repair, remedy, or correct the vices or defects in the property which he sold. If he is unable to do so, he must restore the purchase price and reimburse the reasonable expenses occasioned by the sale and those expenses incurred for the preservation of the property. LSA-C.C. art. 2531; Burch v. Durham Pontiac Cadillac, Inc., 564 So.2d 380, 383-84 (La.App. 1st Cir.), writ denied, 569 So.2d 968 (La.1990); Sonfield v. Burleson, 543 So.2d [488] at 493 [(La.App. 4th Cir. 1989)].
LSA-C.C. art. 2545 provides that the seller who knows the vice of the thing which he sells and omits to declare it is answerable to the buyer in damages. Besides restitution of the price and repayment of expenses, including reasonable attorney's fees, the bad faith seller is also answerable for other damages. LSA-C.C. art. 2545. Under the proper circumstances, those damages can include nonpecuniary damages for mental anguish, aggravation, and inconvenience. St. Claire v. Lewis, 550 So.2d [737] at 739 [(La.App. 2nd Cir.1989)]; Ditcharo v. Stepanek, 538 So.2d [309] at 314 [(La.App. 5th Cir. 1989)]; Leflore v. Anderson, 537 So.2d 215, 218-19 (La.App. 4th Cir.1988).
It is well settled under Louisiana law that "damages" refer to pecuniary compensation, recompense or satisfaction for an injury or a loss sustained by reason of a violation of an obligation or an owed duty. See Fogle v. Feazel, 201 La. 899, 10 So.2d 695 (1943). Damages are intended to restore the plaintiff, as closely as possible, to the position which he would have occupied if the accident or breach of duty had never occurred. Great American Surplus Lines Insurance Co. v. Bass, 486 So.2d 789 (La.App. 1st Cir.1986), writ denied, 489 So.2d 245 (La.1986).
The relief which plaintiff seeks is not a proper element of damage. To grant this relief would not place plaintiff as closely as possible to the position which he would have occupied if the breach of duty to deliver to him a reliable vehicle had not occurred, but considering the damages heretofor awarded would be a windfall.
Accordingly, for the reasons stated, the judgment of the trial court is amended to allow defendants, Walker Oldsmobile Company, Inc. and Mercedes-Benz of North American, a credit for plaintiff's use of the 1990 Mercedes-Benz automobile in the sum of $8,260.35. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are taxed to defendants.
AFFIRMED AS AMENDED.
NOTES
[1] Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976).