# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 18-355


**TERRY GOTCH**

**VERSUS**

**SCOOBY'S ASAP TOWING, LLC, ET AL**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2014-0495
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy H. Ezell, and Candyce G. Perret, Judges.


**REVERSED AND REMANDED.**

**Lawrence Blake Jones**
**Lawrence J. Centola, Jr.**
**Blake Jones Law Firm, L.L.C.**
**701 Poydras Street, Suite 4100**
**New Orleans, LA 70139**
**(504) 525-4361**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Terry Gotch**

**Nicole M. Boyer**
**Ryan M. Malone**
**Duplass, Zwain, Bourgeois, Pfister, Weinstock & Bogart**
**3838 North Causeway Boulevard**
**Three Lakeway Center, Suite 2900**
**Metairie, LA 70002**
**(504) 832-3700**
**COUNSEL FOR DEFENDANT APPELLEE:**
     **Scooby's ASAP Towing, L.L.C.**

**SAUNDERS, Judge.**

This is a suit for damages for personal injuries sustained in an automobile accident. Two different versions of the incident giving rise to this litigation were presented at trial. While the jury was deliberating, the alternate juror advised the court and all counsel in the courtroom that the jurors had ignored the court's Plain Civil Jury Instructions by discussing the case amongst themselves during the proceedings rather than waiting to do so when they began deliberations at the end of trial and had concluded that Defendant was not at fault. After the alternate juror had been interviewed, and within minutes of retiring to deliberate, the jury advised that it had reached a verdict. Plaintiff filed for a mistrial, which the court subsequently denied.

Plaintiff now appeals that judgment. Appellant's argument is that the prejudicial misconduct that occurred during the course of the proceedings can only be cured by mistrial.

**FACTUAL AND PROCEDURAL HISTORY:**

Plaintiff, Terry Gotch ("Mr. Gotch"), filed suit against Defendants, Scooby's ASAP Towing; John Doe; and ABC Insurance ("Scooby's"), for injuries sustained as a result of a vehicular accident that occurred in February 2013. Two different versions of the incident giving rise to this litigation were presented at trial.

Mr. Gotch alleged that Joseph Derousselle ("Mr. Derousselle"), an employee of Scooby's, backed out of a private driveway causing Alydia Menard ("Ms. Menard"), the driver of the vehicle in which he was a passenger, to make an evasive maneuver to avoid a collision. Ms. Menard's vehicle subsequently left the roadway and struck a ditch, causing his injuries.

Mr. Derousselle alleged that after backing out of the private driveway, he noticed Ms. Menard coming around the curve and he pulled back into the driveway.

He further alleges that the fog, together with the excessive rate of speed at which Ms. Menard was traveling on the wet highway, likely contributed to her inability to slow down or stop, and caused her to instead veer off the road.

Following a jury trial, during jury deliberations, the alternate juror advised the court and all counsel in the courtroom that the jurors had ignored the court's Plain Civil Jury Instruction by discussing the case amongst themselves during the proceedings, rather than waiting to do so when they began deliberations at the end of trial. Within minutes of retiring to deliberate, the jury returned with a verdict. After receiving the verdict, having already spoken privately with the discharged alternate juror, the trial court questioned the foreperson, who admitted that the jurors had discussed the case amongst themselves during the proceedings. After the jury was excused, Mr. Gotch moved for a mistrial based on jury misconduct. The motion for mistrial was denied on October 9, 2017.

On October 30, 2017, Mr. Gotch filed a motion for devolutive appeal, which was subsequently dismissed without prejudice because the judgment lacked the proper decretal language. An amended judgment was signed on July 9, 2018.

Mr. Gotch timely filed a second motion for devolutive appeal. Pursuant to that motion, Mr. Gotch is presently before this court alleging two assignments of error.

**ASSIGNMENTS OF ERROR:**

1. The trial court erred by failing to grant plaintiff's motion for mistrial made after the jury verdict because the jury by it's [sic] own admission disregarded the trial judge's instructions not to make any determinations until the end of the trial. The judgment of the jury should be voided and a mistrial granted.

2. In the alternative, the trial court erred by adopting the verdict of the jury as judgment and the judgment should be reversed and judgment rendered in favor of the plaintiff.

2

## ASSIGNMENT OF ERROR NUMBER ONE:

In his first assignment of error, Mr. Gotch contends that the trial court erred in failing to grant a mistrial after members of the jury admitted that they began discussing the case amongst themselves during the proceedings, rather than waiting until they began deliberations at the end of trial, in contravention of the court's instruction. We find merit to this assignment of error.

"[T]he conduct of the trial is within the discretion of the trial court, and that discretion is subject to review only for abuse of that discretion." *Barre v. Bonds*, 99-1806, p. 23 (La.App. 4 Cir. 5/10/00), 763 So.2d 60, 73 (citing La.Code Civ.P. art. 1631).

"The Louisiana Code of Civil Procedure does not expressly provide for mistrials, and the jurisprudence concerning motions for mistrials is limited. Generally, mistrials are properly granted because of some fundamental failure in the proceeding." *Lewis v. Time Saver Stores, Inc.*, 599 So.2d 442, 443 (La.App. 4 Cir.1992) (quoting *Searle v. Travelers Ins. Co.*, 557 So.2d 321,323 (La.App. 4 Cir. 1990)).

In *Leblanc v. Mercedes-Benz of North America, Inc.,* 93-907 (La.App. 3 Cir. 3/2/94), 633 So.2d 399, 402-03, *writ denied*, 94-1225 (La. 7/1/94), 639 So.2d 1169 (citations omitted) (quoting *Barnes v. Thames*, 578 So.2d 1155, 1161 (La.App. 1 Cir.), *writ denied*, 577 So.2d 1009 (La.1991)), (citations omitted), this court noted:

> [A] motion for mistrial in a civil case should be granted under the following circumstances: (1) when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity; and (2) where no other remedy would provide relief to the moving party.
>
> Motions for mistrial should also be granted upon proof of prejudicial misconduct occurring during a jury trial, which cannot be cured by admonition or instruction . . . .

Our review of the record reveals that at the onset of trial, the court instructed the jury as follows:

> You may only discuss the case with the other members of the jury when you begin deliberations on your verdict and all other members of the jury are present. Until you reach a verdict at the end of the trial, don't communicate about your discussions with anyone else.

Our further review of the record reveals that the alternate juror advised the court and all counsel in the courtroom that the jurors had ignored the court's Plain Civil Jury Instruction by discussing the case amongst themselves during the proceedings, rather than waiting until the end of trial during deliberations to do so, and that within minutes of retiring to deliberate, the jury reached a verdict. Moreover, after reviewing the verdict, having already spoken privately with the discharged alternate juror, the trial court questioned the foreperson.

> THE COURT: Okay. Mr. McClelland, I'm going to start with you. By accident, I guess – I'm going to first say that I, obviously, didn't do my job well. When we spoke to the alternate, the lawyers wanted to ask some questions, wanted to know if they were – how they did and what happened. She responded that, "Pretty much from the opening statement, we had decided that the defendant wasn't at fault." I then asked her outside by herself "Was there any discussion amongst you all about the case or about what was going on during breaks and anything else?" And her response was "Yes."
>
> I now have to ask, and I'll start with you, Mr. McClelland, were there any discussions during breaks, and after we recessed, or whatever amongst yourselves about the case?
>
> FOREPERESON (MR. McCLELLAND): Yes, sir.
>
> THE COURT: So I'm going to take full blame in that I said in my opening, but I, obviously didn't do a very good job of telling you all, you should have no discussions about the case, and even in my closing, I said "While I told you in openings, you cannot discuss amongst yourselves or with anyone else the facts of the case. I lift that now to tell you that you can now discuss amongst yourselves, and all that. Okay. So there's no doubt that there was discussions during the pendency of the deal amongst yourselves about the case, and the facts, and the stuff that was going on. Okay.
>
> Could I have done something better or have - -

FOREPERSON (MR. McCLELLAND): I don't think any of us were under the impression that we were not allowed to speak about it inside the jury deliberation room. So, actually, I felt that that was our duty, is to speak about it and discuss it amongst each other to, I mean, come up with a verdict.

THE COURT: Okay. Yes, Ms. - -

JUROR (MS. HENNIGAN): Hennigan.
THE COURT: - - Hennigan. Yes.

JUROR (MS. HENNIGAN): Actually, and I've done this before, I mean, hadn't gone this far, but our understanding is, as he said, that we were not to discuss it outside of that room, I mean, or anywhere in public, or on an elevator - -

THE COURT: Right.

JUROR (MS. HENNIGAN): - - and that's what was made more clear under, you know, don't let anyone you may be passing - - so we really didn't understand that.

THE COURT: Okay.

JUROR (MS. HENNIGAN): I will say some, from the beginning, did feel one way or the other. Nobody made - - I don't know that anyone made a hundred percent decision one way or the other until - - because we all have lots and lots of notes that we took. We took - - every - - I don't want that to look like we did not look at all the information. We looked at all the information, I mean, from percentages to how they backed out, drove in to - - and I know about - - I know a lot about spines and - - Anyway, so there was - - it was a good discussion, it was, and to the point of the benefit of the doubt and everything. But to be able to say that this was - - that any pain and suffering could be caused by the gentlemen backing out of his driveway on a foggy morning, we could not see that. And so - -

THE COURT: I'm not faulting your decision.

JUROR (MS. HENNIGAN): I know, but we tried - -

THE COURT: Right. And I am glad for that to be on the record because somebody might take an appeal. I don't know. So I am, at this time, going to let counsel, if anybody has a question.

MR. MALONE: Your Honor, I just - - No, I don't.

THE COURT: Did anybody not participate in discussions during breaks or in the room with fellow jurors about the case?

5

FOREPERSON (MR. McCLELLAND): I don't - - Also, and I don't know if this is relevant or not, but we didn't - - there was - - throughout our discussions, no one - - I don't think anybody was swayed one way or the other by someone else. Everyone just voiced their own opinion, pretty much all was in agreement.

THE COURT: Right. So the issue will be whether or not the discussions that you had - - I mean, you came to a verdict, you did it, obviously, with discussion amongst yourselves. No one swayed one person from doing it or the other. The issue is just that - - And the reason that we have that charge is so that starting from opening statement and then when you just hear the plaintiff's case, that you all aren't affecting other jurors by your thoughts and whatever on - - from opening through close. Because the defendant - - in this case, the defendants only had one witness, but in many cases defendants may have a day and a half of witnesses, and if you all have been discussing about the case after just hearing what the plaintiff said, you may be forming an opinion during that time that may not be able to be rebuffed now because the defendants haven't put on their case yet. That's the purpose behind it. I don't know, in this case, that it was that effect or not, but – okay.

Based upon the answers to the court's questions by the aforementioned jurors, and its interview with the alternate, it is clear that the fundamental failure that occurred during the proceedings was significant, ongoing, and widespread. It is equally clear that the jurors' prejudicial misconduct cannot be cured by admonition or instruction. As such, we find that the trial court erred in failing to grant a mistrial. Accordingly, we reverse the trial court's ruling on this issue.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Mr. Gotch "maintains that Derousella's [sic] trial version of the accident, first offered four years after the incident when he refused to give his version on the scene, is not to be believed, and that the jury verdict in favor of defendant should be reversed and judgment rendered in favor of the plaintiff as they [sic] verdict was not reasonable." We find no merit to this contention.

Our review of the record reveals that the jury was presented with two viable versions of the incident giving rise to this litigation. It is the role of the jury to weigh the evidence, determine the credibility of the witnesses, and reach a verdict based on

6

reasonable inferences of fact. Neither our review of the record, nor Appellant's argument in support of his contention, convinces us that Appellee did not present a viable case. Accordingly, we find no merit to this assignment of error.

**CONCLUSION:**

Terry Gotch asserts two assignments of error as to why the trial court erred in failing to grant a mistrial and in adopting the verdict of the jury. Finding merit to Mr. Gotch's first assignment of error, that the trial court erred in failing to grant a mistrial due to the fundamental failure that occurred during the proceeding, we reverse the trial court's ruling on this issue.

Costs of these proceedings are assessed to Terry Gotch.

**REVERSED AND REMANDED.**